UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **MARINE CLUB MANAGER, INC., EBRM RESURRECTION LLC, and ERIC BLUMENFELD,**<br><br>Petitioners,<br><br>v.<br><br>**RB COMMERCIAL MORTGAGE, LLC**<br><br>Respondent. | Civil Action No. 3:22-cv-609 |

**PETITION TO VACATE, MODIFY, OR CORRECT ARBITRATION AWARD**

Marine Club Manager Inc., EBRM Resurrection LLC, and Eric Blumenfeld (collectively "Petitioners"), by and through undersigned counsel, hereby petition this Court to vacate, modify, or correct the arbitration award entered as a partial award on August 9, 2022 (the "Partial Award"), a clarification of the partial award on September 21, 2022 (the "Clarification"), and a final award on September 26, 2022 (the "Final Award"), in Charlotte, North Carolina (collectively, the "Award"), and in support thereof, alleges the following grounds for their request for relief.

**THE PARTIES, JURISDICTION, AND VENUE**

1.  Marine Club Manager, Inc. ("Marine Club Manager") is a Pennsylvania corporation with an address and principal place of business at 530 South Second Street, Suite 110, Philadelphia, Pennsylvania 19147.

2.  EBRM Resurrection LLC ("EBRM") is a limited liability company with an address of 530 South Second Street, Suite 110, Philadelphia, Pennsylvania 19147.

1

3. Eric Blumenfeld ("Mr. Blumenfeld") is an individual who resides in and is a citizen of Pennsylvania.

4. Mr. Blumenfeld is the sole member of EBRM.

5. RB Commercial Mortgage LLC ("RB") is a limited liability company with an address of 227 West Trade Street, Suite 900, Charlotte, North Carolina 28202.

6. RB is a wholly owned subsidiary of New York Mortgage Trust, Inc., a Delaware corporation, which, upon information and belief, maintains its principal place of business in New York.

7. The amount in controversy between the parties exceeds $75,000 as reflected in the Award.

8. Jurisdiction is thus proper under 28 U.S.C. § 1332.

9. The Award was rendered in Charlotte, North Carolina.

10. Venue is thus proper in this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 11.

## TIMELINESS OF PETITION

11. The Partial Award was issued on August 9, 2022.

12. The Federal Arbitration Act requires notice of any request to vacate the Award to be served on the adverse party "within three months after the award is filed or delivered." 9 U.S.C. § 12.

13. Due to a lack of precedential clarity regarding whether the three months runs from a partial or final award, Petitioners are filing this Petition within three months of the Partial Award.

## BACKGROUND

14. Mr. Blumenfeld is a transformative real estate and community developer well-known in Philadelphia for his renovation of historical buildings that have fallen into disrepair.

15. As part of his efforts, Mr. Blumenfeld renovated the Marine Club located at 1100 South Broad Street, Philadelphia, Pennsylvania, a dilapidated former Quartermaster's depot, into an amenity filled apartment complex over twenty-five years ago (the "Property").

16. In 2014, Mr. Blumenfeld recapitalized his ownership of the Marine Club through a senior mortgage loan on the Property (the "Senior Loan") in addition to the formation of an LLC through which RB would invest $3,350,000 in preferred equity in exchange for an 8% membership equity interest in Marine Club Associates, LLC, with Mr. Blumenfeld retaining the remaining equity.

17. Mr. Blumenfeld and RB, along with Marine Club Manager, Inc. (owned wholly by Mr. Blumenfeld) thus formed Marine Club Associates, LLC (the "Company") (a non-party to this action) as a special purpose entity.[1] A copy of the Operating Agreement of the Company is attached as <u>Exhibit 1</u>.

18. Although RB's investment in the Company is a form of equity, it functions like debt in that the Company makes a monthly payment to RB called a "Minimum Distribution." *See* Operating Agreement, § 7.2(d).

19. The Minimum Distribution consists of a principal payment as well as a 12.5% preferred return rate, effectively the interest rate. *See* Operating Agreement at 6.

---

[1] An organizational chart of the parties' ownership structure is included as part of the Senior Loan Agreement. This chart is not separately paginated but appears at .pdf page 112 of the Senior Loan Agreement.

3

20. The Operating Agreement contains a provision colloquially referred to as a "waterfall" 'that determines the priority of distributions of the Property's Proceeds. *See* Operating Agreement, § 7.2.

21. Under the waterfall, RB cannot receive its monthly Minimum Distribution until the Company has paid the tax and insurance escrows and monthly debt service on the Senior Loan, the operating expenses for the Property, and any other payments due under the Senior Loan. *See* Operating Agreement, § 7.2(a).

22. Under the terms of the Operating Agreement, the Company would make these monthly Minimum Distributions for ten years, after which RB's preferred equity interest would be "redeemed," meaning that it would effectively be paid off and RB would no longer have any ownership interest in the Company. *See* Operating Agreement at 8.

23. In addition, the Company, could buy-out RB's preferred equity interest through what i called in the Operating Agreement a "Voluntary Redemption." *See* Operating Agreement, § 12.1.

24. A Voluntary Redemption requires a calculation of the "Required Redemption Amount," which consists of the outstanding amount of the preferred equity investment, as well as any outstanding preferred or default return. *See* Operating Agreement at 8.

25. After this amount is tendered to RB, the Company would then pay $10 to RB as a form of "peppercorn" consideration for the return of its membership interest. *See* Operating Agreement, § 12.2.

26. Once RB receives the Required Redemption Amount, RB's position within the Company is "extinguished." *See* Operating Agreement, § 12.2; AAA Tr. at 209:13–210:10.

4

Case 3:22-cv-00609-MOC-DCK   Document 1   Filed 11/07/22   Page 4 of 15

27. Under the terms of the Operating Agreement, Mr. Blumenfeld is the "Sponsor," which is akin to being a guarantor of RB's preferred equity investment. *See* Operating Agreement at 8.

28. The Senior Loan on the Property was issued in the amount of $24,650,000 on November 14, 2014, by Cantor Commercial Real Estate Lending. A copy of the Senior Loan Agreement is attached as Exhibit 2.

29. The Senior Loan requires a monthly payment consisting of principal, interest, and tax/insurance escrow reserves. *See generally id.*

30. The Senior Loan is set to mature on December 6, 2024. *See id.* at 25.

31. Mr. Blumenfeld is a Guarantor of the Senior Loan. *Id.* at 8.

32. To confirm the Senior Lender's priority over any payments or distributions made from the Company to RB, the Senior Lender and RB entered into a Recognition Agreement which sets forth each party's right to and priority in the Company's Property Proceeds.[2] A copy of the Recognition Agreement is attached as Exhibit 3.

33. The Recognition Agreement prohibits RB from accepting any distributions from the Property Proceeds if the Company is not current on its monthly debt service to the Senior Lender. *See* Recognition Agreement, § 1(c).

34. The Recognition Agreement also requires RB to immediately turn over any distributions that it has accepted from the Company while the Company's monthly debt service payments to the Senior Lender are in arrears. *See* Recognition Agreement, § 1(c).

---

[2] "Property Proceeds" is a phrase defined in the agreements between the parties, and consists of revenue derived from the operation of the Property, *i.e.* monthly rent.

35. The Recognition Agreement does permit RB to receive payments from Mr. Blumenfeld as Sponsor while the Senior Loan is purportedly in default so long as the Senior Lender has no claims against Mr. Blumenfeld as Guarantor to the Senior Loan. *See* Recognition Agreement, § 1(j).

36. The Company is operated by Marine Club Manager as its managing member. *See* Operating Agreement at 5. Because Mr. Blumenfeld owns Marine Club Manager, he effectively controls the management of the Company.

37. Upon the occurrence of certain events called "Changeover Events," RB could replace Marine Club Manager as the Manager of the Company with its own manager, effectively taking control of the Company. *See* Operating Agreement, §§ 8.1, 8.3.

38. Upon the occurrence of certain events called "Full Recourse Events," RB could seek the Required Redemption Amount directly from Mr. Blumenfeld as Sponsor rather than from the Company. *See* Operating Agreement, § 13.2.

39. After a Full Recourse Event, the Sponsor becomes "fully liable for the repayment of the Required Redemption Amount" and "the Capital Member's [RB] Investment shall thereupon be redeemed." *See* Operating Agreement, § 13.2.

## The Arbitration

40. During the Covid-19 pandemic, RB filed a demand for arbitration with the American Arbitration Association under its Commercial Litigation Rules, seeking declaratory judgments against Petitioners that Changeover Events have occurred such that RB can replace Marine Club Manager as the manager of the Property[3] and that Full Recourse Events have

---

[3] By replacing the Manager, RB would be able to take control of the management of the Company and also earn an additional 7% interest on its investment, for a total of 19.5% intertest on its preferred equity investment. RB testified at the hearing that if it took control as manager

6

occurred such that it could seek recourse of the Required Redemption Amount from Mr. Blumenfeld directly as Sponsor. A copy of RB's statement of claim (without exhibits) is attached as Exhibit 4.

41. Petitioners counterclaimed against RB, alleging that no Changeover or Full Recourse Events have occurred, and that even if they had, RB had materially breached the implied and express provisions of the Operating Agreement prior to the alleged events such that any further performance by Petitioners is discharged until RB cures its material breaches, which it has not. A copy of Petitioners' answer with counterclaims is attached as Exhibit 5.

42. Prior to the final arbitration hearing, Mr. Blumenfeld notified RB of his intent to voluntarily redeem RB's equity interest utilizing non-Property Proceeds on April 25, 2022, in which Mr. Blumenfeld calculated the Required Redemption Amount to be $ 4,413,017.11 and requested RB's current wire instructions. A copy of that correspondence is attached as Exhibit 6.

43. RB refused to confirm the Required Redemption Amount or provide its current wiring instructions.[4] A copy of that correspondence is attached as Exhibit 7. RB's refusal was a complete reversal from its prior actions because it had previously provided a calculation of the Required Redemption Amount on multiple occasions and had even specifically requested that Mr. Blumenfeld engage in a voluntary redemption as Sponsor of RB's preferred equity interest. Copies of those prior calculations and requests are attached as Exhibit 8.

---

of the Company, it would sell the Property to pay itself the Required Redemption Amount. *See* AAA Tr. at 211:10–20.

[4] Although not at issue in this action, upon information and belief, RB refused to be voluntarily redeemed prior to the hearing because it realized that it had spent well over $1.5MM in attorney's fees for this uncomplicated arbitration and if it were voluntarily redeemed, its membership in the Company would be extinguished and it would have no ability or recourse to recoup these attorney's fees.

44. Whether Mr. Blumenfeld had voluntarily redeemed RB was *never* raised as an issue by either party in the arbitration nor was any discovery conducted regarding it. *See generally* the parties' statements of claim.

45. Whether RB has been voluntarily redeemed is a threshold or predicate issue to the resolution of its claims in the arbitration because, as RB had readily admitted in the arbitration, its position and any rights it has in the Company are entirely "extinguished" upon its redemption. Thus, a redemption would moot its claims for a declaration of Changeover and Full Recourse Events in the arbitration and render any hearing superfluous. The entire purpose of a declaration of a Changeover or Full Recourse Event is so that RB can demand that Mr. Blumenfeld directly redeem its preferred equity interest by payment of the Required Redemption Amount.

46. In light of RB's obstructive actions, Petitioners requested that the arbitrator postpone the final arbitration hearings pending the parties' resolution of this threshold voluntary redemption dispute pursuant to the ADR provision contained in the Operating Agreement. A copy of the parties' correspondence regarding this issue is attached as Exhibit 9.

47. In conformance with this request, Petitioners engaged in the first step of the ADR provision in the Operating Agreement by requesting mediation through AAA. *See id.* RB refused to participate.

48. The arbitrator, however, denied the postponement request and unilaterally declared that she would exercise jurisdiction over the parties' voluntary redemption dispute <u>one business day before the final hearing</u>. A copy of that decision is attached as Exhibit 10.

49. Of course, Petitioners had no opportunity to engage in any discovery as to this new claim included in the arbitration one business day before the hearings.

50. Due to RB's frustration of Mr. Blumenfeld's redemption and the arbitrator's refusal to postpone or adjourn the hearing pending resolution of the Required Redemption Amount dispute, the matter proceeded to a final evidentiary hearing before a AAA arbitrator in Charlotte, North Carolina on May 2 and 3, 2022.[5] A copy of the hearing transcripts are attached as Exhibit 11.

51. In the Partial Award, the arbitrator concluded that following constituted Changeover Events: (1) the non-payment of Minimum Distributions after the last distribution was made on March 1, 2020, (2) not maintaining a security deposit bond or the security deposit funds in an escrow account, (3) depositing Company funds in the Operating Account rather than the Clearing Account, and (4) a claim by the Senior Lender of an event of default under the Senior Loan. A copy of the Partial Award is attached as Exhibit 12.

52. The arbitrator further concluded that the following constituted Full Recourse Events: (1) the pledge by Mr. Blumenfeld of some of his interest in the Company in support of another loan, and (2) Mr. Blumenfeld's lack of cooperation as to RB's demand for a change in manager in October 2020. *See id.*

53. In the Partial Award, the Required Redemption Amount was determined to be $5,302,369.93 as of July 5, 2022." *Id.* In addition, the arbitrator determined that the Required Redemption Amount "shall include additional interest at a rate of 19.5% from July 5, 2022 until paid." *Id.* Although there is no express finding, it appears that the arbitrator imposed the additional 7% default interest (on top of the usual 12.5% preferred return rate) as of March 1, 2020.

---

[5] The hearing was briefly reconvened on June 1, 2022, pursuant to the agreement of all parties related solely to RB's request for attorneys' fees.

9

Case 3:22-cv-00609-MOC-DCK   Document 1   Filed 11/07/22   Page 9 of 15

54. Finally, the arbitrator concluded that reasonable attorney's fees to the prevailing party would be assessed separate and apart from the Required Redemption Amount, in favor of RB.

55. The arbitrator reached these conclusions in direct violation of the binding Delaware law cited and argued by Petitioners in their post-hearing briefing. A copy of Petitioners' post-hearing briefing is attached as <u>Exhibit 13</u>.[6]

### Mr. Blumenfeld Attempts To Pay RB The Required Redemption Amount As Required And Calculated By The Partial Award

56. After receiving the Partial Award, Mr. Blumenfeld, through counsel, sought the wiring instructions for Claimant so that the Required Redemption Amount as calculated in the Partial Award could be transmitted to RB in light of the conclusion of law that a Full Recourse Event had occurred such that Mr. Blumenfeld was directly liable to RB as Sponsor for the repayment of the Required Redemption Amount.[7]

57. Claimant again refused to provide any wiring instructions and claimed—for the first time—that the Required Redemption Amount cannot be paid until the Senior Loan has been repaid in full. <u>This is a new claim that RB had never previously raised</u> in its statement of claim, during discovery, at the arbitration hearings, or in its post-hearing briefing. A copy of RB's post-hearing briefing is attached as <u>Exhibit 14</u>.

58. Mr. Blumenfeld thereafter sought a clarification of the Partial Award from the arbitrator to confirm that he can redeem Claimant's preferred equity interest as Sponsor by transmitting the Required Redemption Amount utilizing non-Property Proceeds to RB without regard to the status of the Senior Loan.

---

[6] Petitioners would be happy to provide copies of any hearing exhibits referenced in the briefing upon request.
[7] Mr. Blumenfeld does not concede that any Full Recourse Event has occurred.

59. Separately, the parties briefed the issue of attorney's fees under the prevailing party provision of the Operating Agreement. Claimant claimed to be the prevailing party and sought $1,944,206.97 in "reasonable" attorney's fees.

60. Petitioners objected to those fees for the reasons raised in their briefing regarding RB's request for fees. A copy of Petitioners' post-hearing briefing regarding attorneys' fees is attached as <u>Exhibit 15</u>.

61. Thereafter, the arbitrator issued a purported clarification of the award dated September 20, 2022. A copy of the Clarification has been attached hereto as <u>Exhibit 16</u>.

62. In the Clarification, the arbitrator engaged in analysis of this new claim and, rather than clarifying the prior award, ruled on the new claim raised by RB after the conclusion of the hearing, specifically, whether Mr. Blumenfeld could redeem RB while the Senior Loan was purportedly in default or foreclosure. The Clarification concluded that Mr. Blumenfeld could not so redeem RB under such circumstances. *See id.*

63. Petitioners had no opportunity for discovery, to present evidence or testimony at a hearing, or brief this new claim prior to the rendering of the Clarification.

64. The Final Award dated September 26, 2022, included an assessment of $1,795,846.02 in prevailing party legal fees and incorporated the arbitrator's new conclusion of law reached in the Clarification. A copy of the Final Award is attached as <u>Exhibit 17</u>.

**AAA Appellate Proceedings**

65. Under the ADR provision of the Operating Agreement, either party may seek appellate review of the Final Award.

66. Petitioners have filed a AAA appeal regarding the Final Award.

67. The appeal is proceeding pursuant to the AAA Optional Appellate Rules, to which the parties have agreed to abide.

68. AAA Optional Appellate Rule A-2 provides in pertinent part:

> Upon the filing of a Notice of Appeal pursuant to Rule A-3 of these Rules, the parties agree that the Underlying Award shall not be considered final for purposes of any court actions to modify, enforce, correct or vacate the Underlying Award ("judicial enforcement proceeds"). . . . The parties agree to stay any already initiated judicial enforcement proceedings until the conclusion of the appeal process.

AAA Optional Appellate Rule A-3.

69. The parties to the appeal held a preliminary conference call with the appellate arbitration panel on November 3, 2022. The tribunal anticipates a decision on the appeal by January 10, 2023.

70. Due to the time limitations imposed by 9 U.S.C. § 12 and a lack of precedential clarity as to the effect of an arbitration appeal on those time limitations, Petitioners are filing this action to preserve their rights to seek vacation of the Final Award.

71. Petitioners intend to file a motion to stay and abey this Petition pending resolution of the AAA appeal.

## CONCLUSION AND REQUEST FOR VACATION, MODIFICATION, OR CORRECTION

72. The Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3) because the arbitrator was guilty of misconduct in refusing to postpone the final arbitration hearing to permit the parties to resolve the threshold issue of whether Mr. Blumenfeld had voluntarily redeemed RB pursuant to the ADR provision of the Operating Agreement.

73. The Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3) and (4) or modify it pursuant to § 11(b) because the arbitrator was guilty of misconduct and misbehavior prejudicial to Petitioners and exceeded the scope of her powers by unilaterally declaring that she

12

Case 3:22-cv-00609-MOC-DCK   Document 1   Filed 11/07/22   Page 12 of 15

had jurisdiction over a new claim not raised by either party in the arbitration regarding whether Mr. Blumenfeld had voluntarily redeemed RB's preferred equity interest.

74. The Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3) and (4) or modify it pursuant to § 11(b) because the arbitrator was guilty of misconduct and misbehavior prejudicial to Petitioners and exceeded the scope of her powers by deciding a new claim not raised by either party in the arbitration, after the hearings were closed and the Partial Award had been rendered, regarding whether Mr. Blumenfeld as Sponsor could redeem RB's preferred equity interest pursuant to the Partial Award that declared a Full Recourse Event while the Senior Loan is purportedly in default or foreclosure.

75. The Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3) and (4) or modify it pursuant to § 11(b) because the arbitrator was guilty of misconduct and misbehavior prejudicial to Petitioners and exceeded her powers by unilaterally exercising jurisdiction over a new claim and forcing Petitioners to arbitrate this new claim with (1) only one business days' notice before the arbitration hearing and (2) without any opportunity for discovery.

76. The Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(3) because the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, specifically the email identified by Bates number LNR0002642, offered in rebuttal to Claimant's argument in its post-hearing briefing that RB was not the cause of the Senior Lender declaring a default and springing the cash trap. A copy of that email is attached as <u>Exhibit 18</u>. The AAA Commercial Rules expressly permit the arbitrator to consider such post-hearing evidentiary submissions.

77. Alternatively, the Court should vacate the Award because it was issued with manifest disregard for the law by failing to follow binding Delaware law in construing and

interpreting the plain language of the Company's Operating Agreement and the Recognition Agreement as well as the binding Delaware law regarding material breach by:

- Concluding that Mr. Blumenfeld could not redeem RB's preferred equity interest either as a voluntary redemption or a full recourse event while the Senior Loan is purportedly in default or foreclosure;
- Concluding that a Changeover Event had occurred;
- Concluding that a Full Recourse Event had occurred; and
- Concluding that RB was the prevailing party in the arbitration.

78. Alternatively, the Court should vacate the Award because it was issued with manifest disregarding for binding Delaware law by ordering an award of unreasonable and unconscionable attorneys' fees to RB, a non-prevailing party.

79. Finally, the Court should vacate the Award pursuant to 9 U.C.S. § 10(a)(2) because the totality of each of the aforementioned grounds for vacation demonstrates a pattern of evident partiality by the arbitrator against Petitioners.

WHEREFORE, Petitioners respectfully request that the Court vacate, modify, or correct the Award, enter an order awarding attorneys' fees and costs to Petitioners, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 7, 2022

s/J. Anthony Penry
*Counsel for Petitioners*
Penry Riemannn pllc
2245 Gateway Access Point, Suite 203
Raleigh, NC 27607
Telephone: (919) 792-3891
Fax: (919) 516-0880
Email: andy.penry@penryriemann.com

*OF COUNSEL:*

**BRAVERMAN KASKEY GARBER P.C.**

BENJAMIN A. GARBER
MELISSA A. ANDERSON
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
(t) (215) 575-3800
(f) (215) 575-3801
(e) bgarber@braverlaw.com
(e) anderson@braverlaw.com